By the Court—Sedgwick, Ch. J.
—Section 503 of chapter 410 of the Laws of 1882, enacts, that before the alteration or repair of' any building is commenced, the owner shall submit to the Fire Department a full copy of the plans of such proposed alteration and a detailed statement of the specifications in writing, and that the statement and copy shall be kept on file in the office of Inspector of Buildings in the Fire Department; and the alteration shall not be commenced or proceeded with until the statement shall have been filed and said specifications and plans shall have been approved by the Inspector of buildings.
Section 498 declares that before any building shall be altered, the same shall be first examined by the department to ascertain if the building is in a good and safe condition to be altered, and no building shall be altered until after such examination and decision.
The relator was chief clerk in the bureau of inspection of buildings. According to Ms statement of what he actually did, it was his duty to receive applications for permits to alter, to place the application in the hands of an examiner, whose duty was to examine the buildings, to instruct inspectors of districts, to report violation, of the building laws, to see that the application and the report of the examiner be forwarded to the Inspector of buildings for his action, and to issue to the proper persons the decision of the inspector, in. approval or disapproval. Other clerks performed a similar kind of duty. He was the superintendent of their action. His duty, in substance, was to direct the operation of the bureau, in its practical relation to the enforcement of the building laws, under directions of the orders of the department. Any conduct of Ms of a personal kind that was likely to result in a violation of the building laws was a neglect and violation of the official duty imposed upon him personally. Especially was this true when his conduct by his wrongful act took the *372 color of office and was the opposite or negative of the thing he was bound by his office to do. It may have been true, that he intended that in the end the public should have the same protection in the illegal course that it would have had if the law had been respected. But the law had separated the particular thing from its practical consequences, and had unequivocally declared that it should not be lawful. What the relator did was intentional, and therefore willful (People v. Brooks, 1 Den. 459).
It is said that it was no part of his official duty to give permission to applicants to proceed with their alterations or refuse that permission; and that as this is presumed to have been known to the applicant in this case, what the relator said must be deemed to* be unofficial. This position disregards the consideration that the office being one to assist in the enforcement of the law, it is implied that to perform its duties, it will be necessary not' to advise or suggest to any one that the requirements of the law may be disregarded.
The relator testified that he took the course he did, in pursuance "of what he thought had been the instructions of his. superior, the Inspector of Buildings. The Inspector,. in fact, had not given such instructions. The instruction's that were given had not disregarded the necessity of having the building first examined while the relator told the applicant to proceed to alter before any examination had been made. The instructions, if they had been as the relator testified he thought they were, would not have justified the relator in obeying them, for as they were invalid, the Inspector had no power to give them and it was the relator's dq.ty to disregard them.
The action of the Board in removal is dffirmed with costs.
An order should be entered confirming the determination reviewed with costs, fixed at the sum of $25 and disbursements.
Freedman and O’Gorman, JJ., concurred.